**EDELMAN et al. v. UNITED STATES.**

**No. 48957.**

United States Court of Claims.

July 10, 1950.

John W. Cragun, Washington, D. C., for plaintiff. William D. McGraw, Washington, D. C., was on the brief.

Carl Eardley, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

In April 1945, Leyde and Leyde, a copartnership, executed a contract with the

defendant for the construction of 152 life rafts. In May 1945, the plaintiff made a subcontract with the prime contractor to construct these rafts to be delivered between June and September 1945. The Arlington Trust Company, assignee of Leyde and Leyde, agreed that its assignment would be subject to the plaintiff's subcontract and that it would forward to plaintiff all payments received from the defendant for plaintiff's benefit. On August 21, 1945, the prime contract was terminated for the convenience of the Government and, as directed by the defendant, Leyde and Leyde terminated the subcontract.

The termination provision of the prime contract provided that expenses incidental to termination would be paid in accordance with the Statement of Principles for Determination of Costs upon Termination of Government Fixed-Price Supply Contracts. This Statement provided, in part, as follows:

" * * * Certain costs are specifically described * * * because of their particular significance, and, as in the case of other costs, should be included to the extent that they are allocable to or should be apportioned to the contract or the part thereof under consideration.

*     *     *     *     *

"(k) *Settlement expenses:* Reasonable accounting, legal, clerical, and other expenses necessary in connection with the termination and settlement of the contract and subcontracts and purchase orders thereunder, including expenses incurred for the purpose of obtaining payment from the Government *only to the extent reasonably necessary for the preparation and presentation of settlement proposals and cost evidence in connection therewith.* [Italics supplied.]"

As a result of the termination of the subcontract and seeking "fair compensation" under the Contract Settlement Act of 1944, the plaintiff filed claims in the amount of $69,619.72 which were allowed and paid. In addition to the foregoing, the plaintiff sought $6,849.03, the subject of this suit, and the same was denied.

After the contracts were terminated the plaintiff filed requests for partial payment, together with a proposal for final settlement of the claim, all as authorized by the Act. These were approved by the prime contractor and received by the defendant on November 13, 1945. The defendant did not act with dispatch on the application and proposal but on January 4, 1946, sent a check for $20,061.76 for the benefit of the plaintiff to the assignee trust company. The prime contractor, however, refused to authorize the assignee to release the funds because it contended that the plaintiff was indebted to the prime contractor in a sum in excess of the payment. As soon as the plaintiff found out about this situation, request was made that the defendant, through the Maritime Commission, settle directly with the plaintiff. The plaintiff also requested that the Maritime Commission assist it in securing possession of the blocked partial payment. On January 18, 1946, the Commission did direct the prime contractor to return the money to the Commission, but he did not do so. The plaintiff then hired legal counsel to untangle the blocked funds and to represent the plaintiff in getting the defendant to make a direct settlement with it of its termination claims.

On April 19, 1946, a second partial payment in the sum of $24,162 was forwarded directly to the plaintiff. The prime contractor and the plaintiff were unable to agree upon the disposition of the first partial payment and finally agreed to arbitrate the issue. As a result of the arbitration it was determined that the first partial payment was due the plaintiff and the plaintiff was thereupon paid the sum of $20,061.76. In July 1947, a final settlement in the sum of $12,287.42, representing the final payment, was allowed. However, the sum which is the subject of this suit was not allowed. Plaintiff alleges this sum, in the amount of $6,849.03, represents its costs in securing direct and final settlement, partial payments and the retrieving of the impounded funds through arbitration proceedings. It is agreed that the major portion of the expenses incurred and represented by this sum arose as a result of the arbitration proceedings. It is further

agreed and the evidence shows that it is not possible nor has it been undertaken to apportion or allocate the amount of expenses as between the arbitration proceedings, preparation and presentation of settlement proposals and obtaining payment. It is the plaintiff's contention that the sum claimed arises from a single effort to secure payment of the contract termination claim, of which the item arbitrated was but a part. The question arises as to whether or not the sum here claimed is authorized by the Contract Settlement Act of 1944, 58 Stat. ch. 358, p. 649, 41 U.S.C.A. § 101 et seq., and applicable regulations, or by the contract.

The Act of 1944 provided that war contractors, including subcontractors, would be paid "reasonable accounting, legal, clerical and other costs and expenses incident to termination and settlement of the terminated war contract." The Act in Sec. 6(b) also provides for establishing methods and standards for determining fair compensation. Among the standards so established was Regulation No. 5 which provided:

"(k) *Settlement Expenses:* Reasonable accounting, legal, clerical, and other expenses necessary in connection with the termination and settlement of the contract and subcontracts and purchase orders thereunder, including expenses incurred for the purpose of obtaining payment from the Government only to the extent reasonably necessary for the preparation and presentation of settlement proposals and cost evidence in connection therewith. (Code of Federal Regulations of the United States of America, 1944 Supplement, Title 32, Paragraph 8003.1(k); OCS Reg. 5, 2(k).)"

It will be seen that the foregoing regulation is the same as the provision incorporated by reference in the prime contract, raising a question as to the effect of such provision on the plaintiff subcontractor, a question we need not reach if the regulation quoted above is valid. The plaintiff says that the regulation is "a bold contradiction of the statute and constitutes an officious attempt to spurn the directions of Congress" to prescribe standards which would fairly compensate war contractors for termination expenses, taking into account "reasonable accounting, legal, clerical and other costs and expenses incident to termination and settlement." The plaintiff has not briefed the question and our independent search discloses no authority to substantiate the view. It is true, as the plaintiff states and the statute, Sec. 6(d), provides, that Congress gave a mandate to the contracting agency that war contractors should be fairly compensated for "costs and expenses incurred by the war contractor which are reasonably necessary for the performance of the war contract and properly allocable to the terminated portion thereof under recognized commercial accounting practices." Allis-Chalmers Mfg. Co. v. United States, D.C.1946, 67 F. Supp. 385, 386, affirmed, 7 Cir., 1948, 165 F. 2d 495, 497. And we have held that it is clear from the statute that the contracting agency must include attorneys' fees incurred in connection with termination negotiations with it although they are not allowable in connection with appeals before this Court or the Board of Contract Settlement, when the expenses were incurred after final determination has been made by the terminating agency. Piggly Wiggly Corporation v. United States, 112 Ct.Cl. 391, 432, 81 F. Supp. 819. The amounts claimed here are not of this allowable character in any ascertainable degree. It is admitted that most of the expenses were concerned with the arbitration. If this is so, they were not "reasonably necessary for the preparation and presentation of settlement proposals and cost evidence in connection therewith," unless, possibly, as the plaintiff contends, the arbitration was required by the defendant as a condition precedent to settlement. Such a contention is without foundation. It is true that the defendant did not want to pay the blocked amount twice and that it wanted to be released from such a possibility before making a final settlement but it did not make any requirements upon the plaintiff as to how this should be done. The record shows that it was the idea of the prime contractor and the plaintiff's lawyer that there should be an arbitration. The defendant was not a party to this arbitration. The defendant did not cause the

arbitration to take place. The defendant was properly within its rights under the contract in making the payment to the assignee for the plaintiff's benefit and it was not the defendant's fault that the prime contractor and the plaintiff got into a dispute between themselves about a claim to which the defendant was not a party and which caused the blocking of the funds. It was doubtless against such contingencies that Congress gave broad authority for the promulgation of regulations such as No. 5 and on the basis of which it was issued. There is no good reason why the Government should be called upon to pay the legal expenses of private litigants in matters to which it is not a party. Such fees are not allowed even in suits against the United States in absence of an express statutory provision allowing them. Piggly Wiggly Corp. v. United States, supra. It is further to be noted that the second partial payment was made before the arbitration, which belies the contention that it was a condition precedent to such payment. These arbitration expenses resulted from an independent act of the prime contractor and were not a reasonable, natural incident of termination and settlement. There is no natural, causal relationship between such expenses and the termination and settlement. Congress was not unaware of the existence of such a principle as here now in question. It existed first in a Statement of Cost Principles, a directive issued by the Office of War Mobilization on January 8, 1944. Federal Register, January 12, 1944, p. 479. For a while, Congress considered writing such a provision as here disputed into the Contract Settlement Act itself and the House of Representatives did so. It was taken out in conference, not because it was thought to be an undesirable thing but because the Congress determined that the guideposts should remain more flexible than they would be if the Act went into such detail. The Congress at no time made any determination, though it had ample opportunity to do so, that allowable settle-ment expenses should be other than those "reasonably necessary for the preparation and presentation of settlement proposals and cost evidence in connection therewith," and that certain latitude should be given proper authority to construe the language of Sec. 6 of the Act, that "The Director may interpret the provisions of this subsection (d) and may provide for the inclusion or exclusion of other costs." Congressional Record, Vol. 90, Part 5, Page 6056. The Director of Contract Settlement construed this language against costs such as those in this arbitration which are not reasonable or which are not an incident of termination and settlement.

We give no weight to the suggestion that no dispute would ever have arisen, resulting in the costs of an arbitration, had not the defendant terminated the contract and that therefore the defendant should be liable. The defendant was acting in its sovereign capacity in terminating for its convenience, as the contract provided, and there is no showing that in doing so it was discriminating against the plaintiff as a war contractor. It is more accurate to say that this whole matter never would have arisen and the Government would not have been put to the trouble and expense of defending itself against this action had not the plaintiff and its attorney decided to enter into an arbitration they believed necessary to settle a dispute growing out of the plaintiff's failure to deliver, as per schedule, the life rafts it contracted to make, a fault in no way due to the defendant.[1]

It appears from the findings, from the record as a whole and from the evidence, that none of the matters connected with the plaintiff's termination claims was of substantial difficulty except the arbitration. There is no evidence which shows the portion of those expenses in the claim allocable to preparation and presentation of the settlement proposals and cost evidence in connection therewith. Plaintiff's counsel

[1]. The plaintiff did not deliver the rafts in the time specified in its contract but the Arbitration Board found that the plaintiff was excused from compliance with the delivery dates because it had made reasonable effort to secure materials and labor and was not responsible for the delays.

stated that no effort had been made to so allocate these expenses, nor was it possible. It should be noted that the defendant has paid the plaintiff the reasonable costs of preparation and presentation of the first two settlement proposals and the cost evidence in connection with them which are the only type of allowable costs under the statute and the regulations. The compensable proceedings taken by the plaintiff after submitting the second Settlement Proposal on March 13, 1946, consisted of the filing of the third set of settlement proposals which differed from the second only in that there was added the claim for the $6,849.03 (as corrected) alleged additional settlement expenses which are the subject matter of this controversy.

In conclusion we observe that aside from the legal issue heretofore disposed of, analysis of the items going to make up the pending claim, which are to a great extent unsubstantiated by competent evidence, causes us to wonder about the reasonableness of the sum claimed to the extent that we feel it would not merit any attempt on our part to arrive at a jury verdict. It follows, therefore, that the plaintiff is not entitled to recover, and the petition is dismissed.

It is so ordered.